United States of America v. Davis. Mr. Rivera. Morning, Your Honor's Joe Rivera here for Mr. Rodney Davis. May it please the court, Your Honor's. This case arises out of a traffic stop, a speeding violation, uh, in connection with which they I'm humming a little bit connection with which the trooper performed the sort of task you would normally expect out of a traffic stop. Check license, check registration, check insurance. Having done all that, the trooper then proceeded to say, I'm gonna issue you a warning for that speeding violation. But after making that decision, the trooper continued to detain Mr Davis for an additional 35 minutes to run his criminal history, to question him about his criminal history and to call in a drug dog that ultimately led to the discovery of the drugs in the firearm that are the basis of the convictions that are now on appeal. That prolonged detention violated Mr Davis's Fourth Amendment. I have two basic issues to the court to explain that. First, the new case of Rodriguez v. United States and this court's own decision in Valdez v. United States or United States v. Valdez show that the way that the Fourth Amendment should have applied to this traffic stop limited the officer from further detaining Mr Davis after the traffic violation had been resolved. And second, no additional or new reasonable suspicion justified the prolonged attention after the warning demonstrated that the violation had been resolved. And I'll start with the discussion of Rodriguez since it is a case that actually came out since the briefing and it's probably not as thoroughly addressed in the briefing as I would have liked for it to have been in Rodriguez. We're dealing with an ordinary traffic stop scenario. A gentleman has pulled over for having swerved onto the shoulder of the road. He's pulled over and as you would expect, the trooper performs those reasonable checks, runs his insurance, runs his license, checks his I'm going to dispose of your swerving by way of a warning and issues the warning. He then prolongs the detention to call in a drug dog, at which point evidence is found that leads to Mr Rodriguez's prosecution. It goes up on appeal in the United States Supreme Court, then discusses both the permissible scope of a traffic stop in terms of its duration and the acts that an officer can engage in during a traffic stop terms of duration. What's accomplished the mission or the purpose of a traffic stop? And the court makes clear that the mission or the purpose of a traffic stop is resolving a traffic violation. But it wasn't clear in Rodriguez that there were no new factors determined determined after the stop that would justify prolonging it. And so if the only justification is the traffic violation, Rodriguez applies here. The government argues there was more learned after the stop, and I don't specifically say that, but generally, uh, that would mean Rodriguez is not directly applicable. What about that? Yes, Your Honor. The Supreme Court does expressly reserve the issue and on remand. It's left to the district court to determine whether additional reasonable suspicion justify the prolonged attention. And so our approach is one under Rodriguez. The traffic stop ended as the justification for the wait for the drug dog. That's all you have is a traffic stop is what Rodriguez holds correct. That's that's that's essentially it. Yes, Judge. That Rodriguez says traffic stops not a justification. And the point number two of our argument is just that no additional reasonable suspicion arose to justify the prolonged attention. Uh, he didn't have a criminal history. He did have a criminal history. Yes, Your Honor. But yes, for drugs. Yes, for drugs. But the point being there, when do they call the drug dog? Well, they call the drug dog. Yes, in part because of the criminal history. But that's that's where Valdez, this court's own precedent. Valdez comes into play when you come when you combine the impact of Rodriguez traffic stop as the justification ended. When I've done enough to say I'm going to dispose of the traffic stop went up with a warning. Then it becomes up to that point. Was there additional reasonable suspicion? This this court's precedent is clear. Supreme Court precedent is clear. We don't get to in hindsight say, Hey, you have a criminal history. We can consider the totality of all the, um, the facts that are learned during the stop. And during the questioning, you don't just pick one and say, Oh, no, that's not reasonable. You can allow to, um, look at the cumulative effect of the information gathered. Certainly, Your Honor. I agree that Rodriguez have a pit bull in his car. You have a pit bull. He's the one with the pit bull. Yes, he had his pit bull with him. I think she asked of Rodriguez. No, Rodriguez. Oh, pardon me. I'm sorry. No, no, no. I don't believe Rodriguez had a had any sort of dog with him. I wonder if his car looked like it had been lived in. Well, as the district court said, if having a lived in car makes you suspected of drug activity, even his own wife and I would as well be would be suspected of want to see my pickup truck. But let me before we before we move too far past your question about the criminal history as part of the reasonable suspicion analysis, what we point out very, very clearly in our briefing and in our rule 28 letter to the court is that the criminal history arose as a consideration only after the traffic stop in. And so my point, Your Honors, would be that in order to prolong the detention, the reasonable suspicion to prolong, it has to arise during the otherwise justified portion, right? You can't say I suspected you of criminal activity because you have a criminal record. And I learned of that criminal record after my legitimate purpose for detaining you had been over. He had to have learned about the criminal activity or the criminal history during the otherwise justified a reasonable portion of the detention. So as invalid as, for example, where an officer pulls over a fellow for having suspected of having a bad registration and too dark window tinting. This court addressed that the questioning about running criminal history and questioning about criminal history and said when the officer approached the vehicle, saw the registration was okay, used his tool to check whether the tenting was too dark. The traffic stop as a justification, uh, window tinting the registration that was that was over and it has to end unless there's new reasonable suspicion. The officer did go on to question the individual about his criminal history, run its criminal history, see the see that he had one. But all that occurred after the legitimate purposes had ended. And so you can't say, well, I had new reasonable suspicion during the otherwise challenged portion of the detention. Well, counsel, I understand why you're focusing on the things that you don't work. Let's talk about the factors the court relied on, which are individual pieces recognized. Another case law, the nervousness of your client, the pit bull, which, based on the training the officer had received, could be an indicator of of a intimidation factor to keep police from looking in the car. Uh, known drug corridor. I'm glad to hear the interstate 45 is known drug corridor and implausible travel plans. And that's the accumulation that the district court look to. Um, each of those have some component in the case law. You have to overcome that as being sufficient. Why don't you take a run at that? Okay, I'll do that. Let's start with nervousness. Let me back up. Let me start with the interstate 45 issue. I know. Remind me. This is Houston to Dallas. Is that 45? That's that's correct. Um, the notion that given the number of people who travel on an interstate, uh, that that somehow ways in favor of, uh, drug activity. No, we have drug corridor cases, and it seems to me some of them are interstates. Um, if you tell me all of them were small country roads near in South Texas somewhere, but I don't think they are. Isn't that a factor? I don't deny that it is a factor, Judge. But what we have some cases that say, Oh, the fact that he took back roads is suspicious. So you can't go back roads. You can't go in interstate. Well, that's exactly the point that I'm trying to make with the interstate 45 issue. You're if you take back north south interstates that are not drug corridors. That's exactly my point. You take back roads. You're being suspicious. You take the main road. You're being suspicious. You speed. You're being suspicious. You drive too slow. You're being suspicious. Your car's dirty. That's suspicious. It's too clean. That's suspicious. That's why you have to rely on the office's training and experience to know how to which is I think what took Southwick was asking you to address once you get all the issues together. Why isn't that reasonable suspicion? How do you distinguish that? Certainly an officer's training, his experience, what he's learned in the field is worthy of some difference. But the statement that based on my training and experience travel on interstate 45 is indicative of drug activity is not some magical incantation. This court has to look at whether or not and how meaningful the factor is. And so when you say okay, interstate 45, that's one factor nervousness. The other factor that admittedly is is one that has been considered by this court and other courts. In this case, though, I think one nervousness in and of itself is an understandable aspect of any police interaction and is to be given some weight in terms of indicating reasonable suspicion. But it's it's also to be taken with a grain of salt, given that the amount of force that police have, particularly in light of recent events, Ferguson, Baltimore, Cleveland, back home in Texas with bland. If I get faced with the police officer, it's it's reason for me to be a little nervous. And the remarkable part about Mr Davis's nervousness came again during the challenge portion of the detention, not before it in order to justify what the officer testified to is he was nervous when I was interacting with him. But then when I he wasn't relieved. Well, if an officer tells me Mr Rivera, I'm gonna give you a warning for speeding, but you're not free to go. I would probably not be relieved either. I might get more nervous. And so again, that's not a factor that weighs significantly in favor of reasonable suspicion. One of the things on nervousness of minor factual point is that I don't every day in Texas is hot, but this was a hot day in Texas and your client was sweating a good bit, even though the officer's car was air conditioned. Is any evidence of where the air conditioner was on in his car in the Davis's car? I believe that those questions were asked, and I don't think there was a definite answer one way or the other. So if he's sweating profusely without knowing what his metabolism is, he's been in air conditioned car walks a few feet, gets in another air conditioned car. It seems like that would be a factor of that evidence is there. Well, I would point out to the court that there was an indication that they briefly stood outside. I think if I finished the last four minutes of my argument outside, we all might break a little sweat. And so again, that's a factor that the court can consider. But how strong is that factor? He broke a little sweat on a hot Texas day standing on the totality that Judge Clement has focused us both on. Each little piece goes on the side of the scale of reasonable suspicion, it seems for me. But I think I think when you talk about when you talk about the totality again, you have to not not just view the totality in terms of everything that rose during the interaction, but when it arose when the traffic stop began under Rodriguez, the purpose, its justification and thus its limitation in terms of duration and activity were to resolve the speeding violation. And so in taking steps to resolve the speeding violation, the officer is able to gather new facts or additional facts that rise to the level reasonable suspicion of some other activity. Fair enough. But my point would be that those facts that arose during that justified detention were he was sweating on a hot Texas day and he had his dog with him. Even the district court rejected the lived in factor. Even the district court rejected the fact that he was on a turnaround trip. That's fair enough. He's on a turnaround trip. The officer said there were inconsistencies in the statements, but never identified what those inconsistencies were. Is that correct? Well, the only the only statement I believe that the officer really that was ever really discussed in terms of Mr Davis's credibility and during the district court was ownership of the car. I don't think anyone ever contested the fact that he was on a turnaround trip to see folks in Dallas and was coming back home. And the district court, uh, during the questioning during in the transcript of the hearing, essentially dismissed that as a consideration in terms of the registration of the car. Mr Davis testified, and he told the officer or the trooper, it's my sister's car, and there's never been anything to contradict that. In fact, the officer ran the registration. It wasn't stolen. Wasn't there was no complaints about it. And the court, the district court made a finding within its order that the registration was clear and fine. We're not talking probable cause. We're talking reasonable suspicion here, and you have this collection of factors, and it seems to me that one somewhat significant again, not probable cause, but somewhat significant factor is the pit bull. Uh uh, reducing the chances that an officer would take too close a look at the interior of the car or search it. Uh, are the pit bull cases or just just the training? I don't recall. There's any case law that mentions the dog, a dog being a factor. I don't believe there are any cases from either the United States Supreme Court or this court addressing pit bull presence as a factor. Well, there's a new Fourth Circuit case that was in the 28 J letter filed by the government. A cotton case. Uh, I don't believe it was a new case. I believe it was, um, okay, it's an old case that came to came to council's attention fairly recently. Um, but in reviewing that case, it's not a factor that weighed heavily. It's not. It's not a factor that the court really hung its analysis on. And, um, I don't think there are any really indications when you look at the record in this case again, the officer says, well, based on my training experience, that's not some cure all or magic incantation. What's that training? What's that experience? Have you done a study? Are there statistics? Or do you have anecdotes of where that's happened before? We have none of that. In this case, only the supposition that a pit bull, which is a popular breed of dog, somehow indicates drug activity. And when you have that alone or that with some nervousness on I 45, I don't think that rises to the level of reasonable suspicion that we should then be detaining folks for an additional 35 minutes to call in drug dogs and perform drug searches. All right. Thank you. You save some time for rebuttal. It's real. He's right that Pitbull cases 2001. So that should have been in your initial brief rather than a 28 year letter. Yes, Your Honor. I wanted to double check that I had caught everything, and I think I missed that one originally because it had a red flag because it was reversed on other grounds. But I did think it was pertinent for the court to at least know about it. And I did cite in the brief a Sixth Circuit case farmer where the presence of a pit bull was part of a reasonable suspicion determination. I want to begin by just answering a couple of questions that were brought up during the original portion of the argument with regard to case law on drug corridors. The pack case cited in our brief clearly used a drug corridor as one reason for reasonable suspicion. You know what the street, what the highway was. Was it an interstate? It was an interstate. Your Honor. Is that the Florida to Texas and back? Is that Packer? That's Gonzalez. It's Gonzalez. It was I 20. And then the question, a factual question asked by Judge Southwick about consistent statements. I did pull in the record on page 95. There were consistent statements about the criminal history. Trooper Smith testified that there was a lot of conflict conflict. I asked him about drug charges on his record, and, of course, I could see that in front of me on my computer. But he didn't mention anything about drug charges, and the drug charge was a traffic before or after saying it was going to issue a warning. That is a little less clear than I would like it to be. Um, at some point, while he's running the criminal history, he says, I've decided to give you a warning. But the record is clear that he hadn't printed it out and finished the process had started to check on his computer before he told him he was going to give him a warning. Yes, Your Honor. And I I think in part the the portion about the criminal history and whether that occurred after the statement about I am going to give you a warning is a bit of a red herring because the reasonable suspicion had been developed by that point. And I do think the pit bull is one of the keys there. You did have the extreme nervousness, the drug corridor, the lived in car, the registration not in his name. And it wasn't just a pit bull. And this part is important to me as a dog lover. It wasn't just that there was a pit bull asleep in the back seat. This pit bull was aggressive, barking, lunging at the window. And it was troop. The trooper testified that this was part of his training and experience, and it's reasonable. The touchstone of the Fourth Amendment is reasonableness. It's reasonable that a pit bull in the back seat, especially if the drug courier is traveling long distance, is going to have to stop for gas, is going to certainly pass people who might be curious about what's in the vehicle. Having an aggressive pit bull in the car could deterrent not only deter not only law enforcement, but other passers by. So I think it's it's not like he had a Siamese cat in the back of his back seat of the car. He had an aggressive pit bull. And on top of that, Trooper Smith says that Davis himself kept saying, Oh, my dog's dangerous. Don't get close to the car. He doesn't like people coming close to the car. Well, if you had a dog pet that was aggressive, wouldn't you warn somebody so you don't get a lawsuit for tort? Well, certainly, certainly I would. But that, along with the other totality of the circumstances, would suggest that there was reasonable having the dog. My point is having the dog is not is a separate issue than warning about the dog. Well, I do think in some ways it goes together that he the trooper testified that was very clear Davis didn't want him anywhere near that vehicle. And I have a dog that her bark is worse than her bite. She'll calm down in just 10 seconds, but she's gonna bark at first. So I do think all this goes together. The troopers impression was he didn't want me anywhere near that car. Well, counsel, it seems to me that most of the evidence you're talking about creating reasonable suspicion is also equally indicative of innocence. Comments Judge Weiner made about the dog. If you have for some reason, uh, one on a pit all that you're not a drug dealer. Um, they may be aggressive, and you want to warn people not to get too close to it. And Interstate 45 carries a lot of people going to SMU who are not selling drugs, I suppose, spending the weekend in Houston. So all these things are innocent in one look, and even collecting them together, uh, would not necessarily make them, uh, particularly strong evidence of criminal conduct. But the case stall does say these are the sorts of factors. And so our issue is there. Is there enough here of these little pieces to create reasonable suspicion? What's your best case that that this cumulative accumulation is heavy enough on the side of the scale? You want us to put them on? Well, I think the case is most similar. Our pack and Gonzalez and certainly I spent all day yesterday reading traffic stop cases, and the facts in each case are a little different. You're not gonna have one that had all of these the same. But in Gonzalez, you did have this was that I 10 I 20 controversy you had. Gonzalez was extremely nervous. He said he was going to Florida, but he was on I 20 when I 10 would have been a better route. And he had drug trafficking on his criminal history. And here there was a criminal history cocaine trafficking on Davis. Gonzalez. Actually, the officer gives him the ticket and then asks about the criminal history. So it's very similar to our case where he said, I'm gonna give you a warning, and then he continues to question him. But the court said in Gonzalez, this is the reasonable suspicion was already there. What's concerning about the Fourth Amendment? The issue that what we're concerned with is detention, not questioning. And the court says that very clearly in Brigham and here by the time those questions were asked, which in the answers were inconsistent and conflicting by the time those were asked, reasonable suspicion had already been developed. And I do think I'm troubled in some ways by, um, the idea and maybe it's just how I'm reading Davis is brief, but that somehow the detention ends when the officer says I've decided to give you a warning. Decided to give you a warning should not mean that the stop is finished. The case law says the stop has to effectuated the stop. You can just amaze. He's not getting a speeding ticket. Yes. And decide. I didn't have a history of getting speeding tickets and decision alone. It's troubling to me because, um, certainly, as I say in my brief, what if you've been 20 miles over the speed limit? The decision to give a the case law says you effectuate the stop. You run the license. You run the registration. You can ask questions. You certainly it includes writing out the ticket and giving a ticket and giving back the license. And nothing in the record suggests that Trooper Smith wasn't diligent that he somehow drug this out. Um, the drug dog was called in about 15 minutes. He asked for to get the drug dog 16 minutes. So this was not like he was dragging his feet and trying to prolong it, which I think is important because Rodriguez does emphasize an officer has time to effectuate the stop, but he should be diligent in doing that. I do think that is one of the lessons of Rodriguez. Davis does rely pretty heavily and again here in oral argument as well as the brief on the case of Valadez, the window tinting case. A key difference between Valadez in the instant case is that no one's challenging that Davis was speeding the purpose for the stop. The 10 going 85 in the 75 mile zone. No one's challenging that. And Valadez, the stop the reason for the stop, the reasonable suspicion for the stop, the registration and the window tint that all went away. The speeding never went away here. So off Trooper Smith was under the Fourth Amendment, allowed to effectuate the stop, run the necessary checks. And along that way, he developed reasonable suspicion. Because of that, the stop was prolonged for the drug dog to arrive. So, uh, under Rodriguez and clearly in light of the differences between our instant case and Valadez, nothing suggests that this was unreasonably prolonged, that his so again, I think I do. I wish I had found the cotton case a little sooner. But with cotton and farmer, certainly there's enough to show that this pit bull really got us over the hump. I do think in rereading the facts, the pit bull is really what brings it to the next level. And it's not just that he was in the car. It's that he was acting aggressively in the barking combined with the training and and again, just the touchstone of the Fourth Amendment. That reasonableness is what we're looking at. And I do think it's reasonable to assume that an aggressive football like that could be a deterrent for a drug courier like Trooper Smith learned in his training. So I can yield the remaining time to the court. I do ask that you have affirmed the district court. There was reasonable suspicion. It was developed before any questions were asked about the criminal history. And thank you for your time. All right. Thank you for yielding your time back. All right, Mr Rivera, you save some rebuttal time. And of course, rebuttal is for rebuttal. Absolutely. I will add no new points. One of the issues that council said gives her some pauses. Some concern is that we're asking you all to adopt a standard by which if an officer announces he is disposed of the citation, whether it be by warning or or a violation, whether it be by warning or citation, the traffic stop has to come to an end. And that's not what I'm doing here today. Even though that rule could easily enough be avoided by officers, don't announce your your decision until you're writing out the paperwork. But the Fourth Amendment is not about paperwork. What Rodriguez says is there are certain actions that can be taken as part of a traffic stop. Run the license, run the registration, check insurance, ask some questions about the travel itinerary itinerary and dispose of the traffic violation. And my point under the fact that this specific case is all of those things that happened. Mr Davis's license had been run. The officer had addressed registration insurance, asked about his travel and on those facts on that investigation said I'm going to issue you a warning. He had done all the things that Rodriguez allows for by that point. So we're not cutting him in the future short by saying if you say I've addressed your situation by way of a warning, but you haven't done the paperwork, you still got all the activity officers will still get all the activity that Rodriguez will allow allows as part of a traffic stop. Um, the other point that I would make when we're talking about the consideration of criminal history as a factor in reasonable suspicion, the record and I quoted this within my rule 28 J letter. But I just wanna make sure it's absolutely clear to this court when testifying before the district court, the trooper stated after I told Mr Davis he was getting a warning. I ran him on my computer and I observed his criminal history. That was not during. That was not before. It was after I had disposed of this traffic citation by way of saying you get a warning. Well, but at that point he's talking about the citation. So what if he gives him a warning? That still processing the the information that is entitled to receive. So I don't. It's not that that cut and dried. I mean, you're saying, Oh, well, he's not gonna give me a ticket. I'm out of here. That's not the way it works. No. And I agree that we have to allow the officer some time to actually go ahead and complete the warning, but complete what he's investigating the information he's or lack thereof. Well, so let me address that in two parts. One some time to do the paperwork. That's I agree. That's fine. But that's the time to do. The paperwork is not an excuse to expand the otherwise permissible scope of, uh, the investigation wasn't offered as an excuse. Wasn't it was offered as one of the factors that led to a factor, but not an excuse in the in the prolongment of the detention. I believe it's one of the factors that I mean, excuse may be a poor word, but it's one of the factors that that this court could consider, arguably, or the district court did consider and saying there was reasonable suspicion. But my point is that as in Valdez, once the traffic citation had been disposed of, even for questioning about criminal history, there's no basis for doing that. You talked about this sort of bright line rule. I thought of one stage. You're saying it doesn't really need to work that way. But I sort of this image of the officer doing what's entitled to do on a Rodriguez or otherwise checking the blocks that proper traffic stop allows, including running, uh, criminal history. Any comments or announces to the person who's driving? I'm not gonna give you a ticket. He's still working away. You're making that announcement. The end of, uh, forcing the officer to stop short what he's otherwise entitled to do. I mean, is any case that says that quite that starkly? Um, because the purposes of the stock of the stop have not been completed. If he's still entitled to do certain other things, and all he's done is announce your conduct that caused a stop is not egregious enough to get a ticket, but he's still working away on his computer. Um, let me I'm gonna run a little short on time, but I want to answer this thoroughly. The case that addresses that is Valdez itself. If you read not only the majority opinion, but Judge Garwood's concurrence of the opinion where this court said once you check the tent and that was the reason you pulled him over, you can't keep him even to run his criminal history or question him. Judge Garwood, then in his concurrence, said, Yeah, we're talking about a criminal history check here. But what if we were talking about license or registration or insurance? In that case, even if the officer made his announcement right up front, I'm giving you a warning. Then, yes, we can detain him to run those computer checks. And the permissible actions as part of a I see a run out of time. What Rodriguez says is when it defines those actions, those computer checks, it says the reason we allow those is because they serve the overarching purpose of a traffic stop roadway safety. And so what Rodriguez lists are checking license, checking for warrants, checking registration, checking insurance. It does not list criminal history because things like criminal history, dog searches, those go go to just generalized ordinary investigation of general criminal activity. And so there's a distinction to be made between the computer check for criminal history, as this court is already recognized in Valdez and those computer checks that are an ordinary part, an acceptable part of any traffic stop license registration insurance. Thank you. We have your argument. Thank you. Thank you, Your Honor.